U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   MAY 11 2012
LORETTA G. WHYTE
        CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 11-019 |
| v. | * | SECTION: "B" |
| ROBBIE RAY<br>a/k/a "Pookie" | * | VIOLATIONS: 21 U.S.C. § 846<br>21 U.S.C. § 841(a)(1)<br>18 U.S.C. § 2 |

\* \* \*

### FACTUAL BASIS

Should this matter proceed to trial, the Government will prove beyond a reasonable doubt, through credible testimony of special agents of the Federal Bureau of Investigation ("FBI"), state and local law enforcement agencies, and the production of reliable evidence, that the defendant, Robbie RAY, is guilty beyond a reasonable doubt of counts 1, 12, 13 15 and 17 of the Indictment. In count 1, the defendant is charged with knowingly and intentionally combining, conspiring, confederating, and agreeing with one or more persons to distribute and possess with the intent to distribute 500 or more grams of a mixture or substance containing a detectable amount of cocaine hydrochloride and 280 or more grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), both Schedule II narcotic drug

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

controlled substances, in violation of Title 21, United States Code, Sections 846.  Count 12 is for a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B)(iii), distribution of 28 grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack"); Count 13 is for a violation of Title 21, United States Code, Section 843(b), use of a communication facility (a cellular phone) in committing a violation of Title 21, United States Code, Section 846; Count 15 is for a violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(iii), distribution of 280 grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack"); and Count 17 is for a violation of Title 21, United States Code, Section 843(b), use of a communication facility (a cellular phone) in committing a violation of Title 21, United States Code, Section 846.  The Government would establish the following examples of Robbie RAY's involvement in the conspiracy and violation of the remaining substantive counts through reliable and competent evidence:

Beginning at a time unknown, but prior to February 10, 2010, and continuing until on or about January 20, 2011, in the Eastern District of Louisiana, Robbie RAY participated in a drug organization that conspired to obtain and distribute at least one and one-half (1.5) kilograms of cocaine base or "crack" and ten (10) kilograms of cocaine hydrochloride.

During the conspiracy charged in the Indictment, testimony from law enforcement witness and co-conspirators would establish that Robbie RAY obtained cocaine hydrochloride from his co-defendant, John Edward BAGENT (BAGENT), for re-distribution as cocaine base or "crack." Robbie RAY also "cooked" or converted cocaine hydrochloride into cocaine base for John BAGENT and others, including himself, primarily at his mother's house on Shady Lane, Slidell, LA.  Robbie RAY also had knowledge that his brother, Courtney RAY, was involved in the conspiracy as a distributor of cocaine base or "crack."  During the investigation, Robbie RAY used various telephone facilities to coordinate illegal drug activities with his co-conspirators, including BAGENT.  Robbie RAY's drug related conversations

with BAGENT were monitored and recorded through a court-authorized Title III wire intercept of a telephone facility used by BAGENT. The following paragraphs contain illustrative examples of Robbie RAY's criminal activity:

**August 4, 2010 - Call sessions 1002:** BAGENT calls **Izeal DUCRE**, a source of cocaine hydrochloride, to complain about the quality of the one ounce of cocaine after it was cooked into cocaine base or "crack." During the call, **Robbie RAY** gets on the telephone and discusses with **DUCRE** the process in which he [**Robbie RAY**] cooked the crack and why it did not turn out like the last two "rips" [cocaine transactions].

**August 5, 2010 - Call sessions 982: Courtney RAY** calls **BAGENT** and tells him to give his brother, **Robbie RAY** ("Pookie"), "that" and the money. "That" refers to one-half of cocaine hydrochloride, which **Robbie RAY** was going to deliver to **Courtney RAY** from **BAGENT**. The purchase price of the cocaine was $1,000 per ounce and **Courtney RAY** had paid this to **BAGENT** in advance. Since **BAGENT** only had one-half ounce of cocaine hydrochloride for sale, **Robbie RAY** was also going to return $500 from **BAGENT** to **Courtney RAY**.

**September 1, 2010--Call session 2721:** an undercover law enforcement officer ("UC") calls **BAGENT** to see if he could handle a sale of a 1/4 kilogram of crack to the UC. The UC wants the crack broken down into eight bags containing one ounce each. **BAGENT** agrees that he can do that as he keeps that much on hand at all times. They discuss the price and agree on $8,000 for each transaction. The UC also wants to do an additional 1/4 kilogram of crack transaction the next week. **BAGENT** confirms that the cocaine would be "hard," which meant that it would be processed into crack.

**September 7, 2010--Call session 3065:** the UC and **BAGENT** confirm the 1/4 kilogram

transaction for $8,000 in United States currency.

  **September 8, 2010--Call session 3108:** **DUCRE** contacts **BAGENT**. **BAGENT** tells **DUCRE** that talked to his "people" (the UC) yesterday and it is "all good" for Friday. **BAGENT** informs **DUCRE**, "I will catch you on the morning schedule, like we normally do." It was established by law enforcement officers that **BAGENT** and **DUCRE** normally meet between 4:30 a.m. and 5:15 a.m. for the purposes of drug transactions.

  **September 9, 2010--Call session 3206:** **BAGENT** instructs **DUCRE** to pass by him when he gets off work.

  **September 9, 2010--Call session 3244:** **BAGENT** and **DUCRE** agree to meet early in the morning. **BAGENT** tells **DUCRE** that he needs him to supply **BAGENT** with five (5) ounces of powdered cocaine. **BAGENT** advises that the UC is coming in the morning at 10:00 a.m. **BAGENT** advises that the UC is going to "hit him back" next week for the same amount. **DUCRE** inquires how far he was going to "stretch" the cocaine [how many additional ounces would be obtained in processing it from cocaine to crack].

  **Call session 3245:** the UC calls **BAGENT** and orders an additional ounce [9 ounces total] of crack. **BAGENT** says that this will not be a problem.

  **Call session 3247:** [based on the UC's desire for one more ounce] **BAGENT** calls **DUCRE**. **BAGENT** asks **DUCRE** to add another "one " [an ounce of cocaine] to the amount **DUCRE** is going to provide **BAGENT** as the UC wants to make it a "full gun" [9 ounces of crack].

  **Call session 3257:** the UC calls **BAGENT** and inquires if they were good for tomorrow. **BAGENT** says everything is good. **BAGENT** confirms the amount of crack he is to sell by asking "nine

[ounces] all together, right?"

**September 10, 2010--Call sessions 3271, 3272, 3273**:  represent **BAGENT** and **DUCRE** contacting each other, starting at 4:38 a.m.  Law enforcement surveillance units observed the meeting between **BAGENT** and **DUCRE** at the Shell gas station near Oakwood Mall, in Gretna, Louisiana.

**Call session 3285**:  **BAGENT** calls **Robbie RAY** and states, "I need you right fast."  This call references **BAGENT's** need for **Robbie RAY** to cook the cocaine hydrochloride into cocaine base or "crack." Law enforcement surveillance units later observed **BAGENT** picking up **Robbie RAY** by vehicle.

**Call session 3289**:  the UC calls **BAGENT** to verify that they were still on for the deal.

**Call session 3299**:  **BAGENT** calls the UC and says that he is ready.

**Call session 3300**:  the UC calls **BAGENT** and confirms that he is at the meet area.

**Call session 3306**:  **DUCRE** calls **BAGENT**. **BAGENT** says that he is talking to **Robbie RAY**. **DUCRE** says that he is "heading in."

**Call session 3307**:  **DUCRE** calls **BAGENT** to find out if the deal with the UC was completed. **BAGENT** advises **DUCRE** that it was completed over an hour ago.  **DUCRE** says that he would see **BAGENT** in a minute.

**Call session 3331**: **BAGENT** tells **DUCRE** that he was at his house and **DUCRE** states that he is about to head that way.

**September 14, 2010--Call session 3499**:  The UC contacts **BAGENT** and asks him about purchasing $15,000.00 worth of crack.  **BAGENT** advises the UC that he had that much crack available for sale.

**September 15, 2010--Call session 3524:** BAGENT calls DUCRE and inquires about obtaining cocaine for September 17, 2010. DUCRE tells BAGENT that he is still waiting on his re-supply of cocaine. DUCRE talks to BAGENT about reaching out to an old partner to see if he had any cocaine left. DUCRE and BAGENT also discuss how far BAGENT was going to "stretch" the cocaine [referring to the cooking process of cocaine into crack].

**Call session 3531:** the UC and BAGENT discuss the upcoming deal. BAGENT advises that he has a new batch of cocaine that he can provide.

**Call session 3554:** DUCRE advises BAGENT that his cocaine supplier did not call yet.

**September 16, 2010--Call session 3566:** DUCRE tells BAGENT that he did not hear from his cocaine supplier last night.

**Call session 3577:** BAGENT advises DUCRE that his customers are wondering when the cocaine is coming in. DUCRE says that it will be tomorrow.

**Call session 3606:** BAGENT calls Robbie RAY and advises that if things go right tonight, they will "pull it off" like last week, referencing a nine (9) ounce crack purchase on September 10, 2010 between BAGENT and the UC.

**Call session 3610:** BAGENT advises the UC that the cocaine supply is coming in tonight and the crack transaction is set for tomorrow.

**September 17, 2010--Call session 3622:** BAGENT advises the UC that he is still waiting on a phone call from his cocaine supplier.

**Call session 3623:** DUCRE tells BAGENT that he has not heard from his cocaine supplier.

**Call session 3634:** BAGENT tells the UC that he is waiting and does not just deal with

anyone.

**Call session 3635:** **BAGENT** and **DUCRE** talk about the UC and **BAGENT** advises **DUCRE** that he has "15 stacks" ($15,000) "waiting to happen" [referencing the amount the UC is going to pay for the crack].

**Call sessions 3648, 3649 and 3652:** a series of calls between **BAGENT** and **EDWARDS**. **BAGENT** advises **EDWARDS** that he has not had any cocaine in three (3) days. They agree to meet at Gloria's Bar in Slidell, Louisiana.

**Call session 3660:** **EDWARDS** advises **BAGENT** that he is on the way to meet at Gloria's Bar.

**Call session 3661:** **BAGENT** advises the UC that it would be a couple of hours before they could meet and that he got the cocaine from "another partner" [referencing **EDWARDS**].

**Call session 3662:** **EDWARDS** advises **BAGENT** that he is going to pick up **Robbie RAY** [so that **ROBBIE RAY** can "cook" or process the cocaine into crack].

**Call session 3663:** **BAGENT** advises the UC to start heading his way in Slidell, Louisiana.

**Call session 3664:** **ROBBIE RAY** tells **BAGENT** that he is waiting for someone to pick him up.

**Call session 3668:** **ROBBIE RAY** and **BAGENT** talk about **EDWARDS** bringing **BAGENT** nine (9) ounces of cocaine.

**Call session 3669:** **EDWARDS** tells **BAGENT** that he could only get his hands on eight (8) ounces of cocaine.

**Call session 3670:** **EDWARDS** advises **BAGENT** that he is on his way to meet **BAGENT**.

**Call session 3671:** BAGENT gives EDWARDS directions to his father's house.

**Call session 3673:** BAGENT calls the UC and pushes the crack deal time back. He instructs the UC that he just got it [referencing the eight ounces of cocaine from EDWARDS].

**Call session 3689:** BAGENT advises the UC that he [with Robbie RAY's assistance] is half-way done ["cooking" or processing the cocaine into crack] because he received it late.

**Call session 3699:** BAGENT and Robbie RAY call EDWARDS and advises him that the cocaine was sub-standard. It only amounted to eleven (11) ounces of crack after it was "cooked" or processed. Accordingly, BAGENT tells EDWARDS that he will only pay him $7,500 for the cocaine.

**Call session 3703:** BAGENT tells the UC to meet by BAGENT's father's house.

**Call session 3711:** BAGENT tells Robbie RAY that he only paid EDWARDS $7,500 for the cocaine. He stated that EDWARDS said Robbie RAY should have only cooked two (2) ounces of cocaine at a time. Robbie RAY advises BAGENT that he in fact only cooked two (2) ounces of the cocaine at a time. Robbie RAY advises BAGENT that the cocaine provided by EDWARDS was of poor quality.

**September 18, 2010--Call session 3719:** EDWARDS calls BAGENT and claims that BAGENT cheated him on the price of the cocaine. BAGENT says that he only got ten and one-half (10½) ounces of crack out of the cocaine in the end. EDWARDS says that he talked to Robbie RAY and Robbie RAY said the crack came out to a higher amount. As such, EDWARDS demands more money from BAGENT.

**Call session 3726:** BAGENT and Robbie RAY talk about EDWARDS being upset because

he was supposedly shorted on the money for the cocaine transaction between **BAGENT** and **EDWARDS**. **BAGENT** tells **Robbie RAY** that he offered **EDWARDS** $250 more to resolve the dispute.

A forensic chemist for St. Tammany Parish would testify that the substance proved by BAGENT to the UC on September 10, 2010 was in fact cocaine base or "crack" and that the net weight was 249.98 grams. The same chemist would testify that the substance proved by BAGENT to the UC on September 17, 2010 was in fact cocaine base or "crack" and that the net weight was 307.87 grams.

For sentencing purposes the Government and the defendant, Robbie RAY, agree that Robbie RAY should be held responsible for at least 500 or more grams of a mixture or substance containing a detectable amount of cocaine hydrochloride and 280 or more grams of a mixture or substance containing a detectable amount of cocaine base ("crack"), which he and the other members of the conspiracy distributed during the course of the conspiracy and because it was reasonably foreseeable to him that this amount of crack would be purchased and/or sold by the conspirators during the course of the conspiracy. Accordingly, Robbie RAY acknowledges that the above-referenced conduct constitutes knowing violations of Counts 1, 12, 13, 15 and 17 of the Indictment.

**APPROVED AND ACCEPTED:**

_____  (date)
**ROBBIE RAY a/k/a "Pookie"**
Defendant

_____  5/11/12 (date)
**D. MAJEEDA SNEAD**
Attorney for Defendant

_____  (date)
**EDWARD J. RIVERA**
Assistant United States Attorney